UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS L. TAYLOR, III, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3550 |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is defendant United States Bank National Association's ("U.S. Bank") motion to dismiss for failure to state a claim upon which relief can be granted. Dkt. 9. After reviewing the receiver's original complaint, U.S. Bank's motion, the responsive briefing, and the applicable law, the court is of the opinion that the motion be **DENIED** as the issues raised are more appropriately addressed at the summary-judgment stage.

The background facts regarding the Evolution receivership have been recounted by this court several times, most recently in an opinion in a parallel ancillary proceeding. *See Taylor v. Cmty. Bankers Secs. LLC*, No. 4:12-cv-2088 (S.D. Tex. June 20, 2013) (order denying renewed motion to dismiss). The court will not review all of these facts in this order, however, and will instead recount the facts that are most relevant to U.S. Bank's motion to dismiss. On August 10, 2011, the Securities and Exchange Commission (the "SEC") commenced an enforcement action styled *Securities & Exchange Commission v. Evolution Capital Advisors, LLC, et al.*, No. 4:11-cv-2945, in the United States District Court for the Southern District of Texas, Houston Division. *See* Enforcement Action ("EA") Dkt. 1. The SEC alleged securities fraud with respect to two "Secured Note" offerings (the "Notes") by Evolution Capital Advisors, LLC ("ECA"), Evolution Investment Group I, LLC

("EIGI"), and Damian Omar Valdez made between February 2008 and August 2010. EA Dkt. 42 at 1. Valdez is the founder and manager of ECA and EIGI (collectively, "Evolution"). EA Dkt. 1 at 5–6 ¶¶ 14–15.

The SEC claimed that Evolution made misleading and incomplete representations to potential investors in the Notes, thereby violating the Securities Act of 1933 and the Securities Exchange Act of 1934. EA Dkt. 42 at 1, 4. Through the sale of the Notes, Evolution received approximately $10.1 million in investments from 82 investors (the "Noteholders"). *Id.* at 5. The SEC also alleged that Evolution used $2.7 million from the proceeds of the second offering to make premium payments to the first offering's investors, in what the SEC characterized as "Ponzi" payments. *Id.* According to the SEC, the alleged misrepresentations in the Notes, along with Evolution's practice of taking "exorbitant" fees in the amount of $2.4 million, created a "dire" financial situation for Evolution and, in turn, its Noteholders. *Id.* As of December 31, 2010, Evolution's assets were at least $1.4 million less than the amount owed to the Noteholders. *Id.* at 5–6.

On December 22, 2011, after an October 2011 hearing, the court granted the SEC's request for injunctive relief and the appointment of a receiver. EA Dkt. 42. The court held that Evolution perpetrated a fraudulent Ponzi scheme through the offer and sale of the Notes to the Noteholders. *Id.* at 28. On January 6, 2012, the court formally appointed the receiver, Thomas L. Taylor III (the "receiver") to locate, take control of, and liquidate the Receivership assets. EA Dkt. 44 at 1–2 ¶ 1. The court further authorized the receiver "to institute . . . such actions or proceedings . . . as may in his discretion be advisable or proper for the protection of the Receivership Assets or proceeds therefrom, and . . . in his judgment be necessary or proper for the collection, preservation, and maintenance of the Receivership Assets." *Id.* at 5 ¶ 12.

As part of his duties, the receiver investigated potential claims arising from the Evolution Ponzi scheme, including a review of U.S. Bank's relationship with Evolution and the securities at issue. Dkt. 1 at 5–6 ¶ 13. The receiver discovered that before the initial ECA offering, Valdez sought a corporate indenture trustee in late 2007 to administer the ECA Notes and represent the Noteholders' interests. *Id.* at 6 ¶ 15. According to the receiver, the process undertaken by U.S. Bank's Trust Department for establishing the new client relationship with ECA lacked the hallmarks of due diligence and was "inadequate and perfunctory." *Id.* ¶ 17. Ultimately, on January 15, 2008, ECA and U.S. Bank executed a Trust and Security Agreement (the "Trust Agreement"). *Id.* at 8 ¶ 23; *id.*, Ex. G (Trust Agreement). The Trust Agreement specified that U.S. Bank "shall not be liable for any act, omission to act or sufferance to exist, *unless the same constitutes gross negligence or willful misconduct on its part.*" *Id.*, Ex. G § 8.1(b) (emphasis added). The Trust Agreement also stated that U.S. Bank "shall not be liable for any error of judgment made in good faith by a Responsible Officer, *unless it shall be proved that [U.S. Bank] was grossly negligent in ascertaining the pertinent facts.*" *Id.* § 8.1(c) (emphasis added).

In this ancillary proceeding, the receiver contends that U.S. Bank's actions and omissions as the Evolution indenture trustee "facilitated and implemented, both directly and indirectly, the Ponzi scheme held by this Court to have been perpetrated by Valdez through the Evolution entities. U.S. Bank personnel, acting with knowledge that the ECA and EIGI Offerings were separate and distinct offerings by different entities, disbursed Ponzi payments consisting of new investors' principal to pay earlier investors." Dkt. 18 at 2 (citing Dkt. 1 at 18 ¶¶ 50–51). Based on this alleged conduct, the receiver asserts six claims, sounding in the following five theories: (1) negligence; (2) breach of contract; (3) fraudulent transfer; (4) unjust enrichment; and (5) constructive trust. *See* Dkt. 1 at

22–28. U.S. Bank filed a Rule 12(b)(6) motion to dismiss, asserting multiple grounds for dismissal of each of the receiver's claims. *See* Dkt. 9.

First, as a threshold matter, the court will apply the Rule 8(a) plausibility standard to evaluate the pleading sufficiency for each of the receiver's causes of action, including the fraudulent transfer claim, for the reasons stated in this court's previous order in *Taylor v. Community Bankers Securities, LLC. See Cmty. Bankers*, *supra*, Dkt. 21 at 13–16. Second, after reviewing the receiver's complaint under this standard, the court concludes that the receiver has pled plausible claims for relief, and further factual development is necessary to assess U.S. Bank's arguments regarding the parties' respective duties and obligations, arising in contract and tort, under the Trust Agreement and governing law. U.S. Bank's motion to dismiss (Dkt. 9) is **DENIED**, and it may reurge its arguments for dismissal at the summary-judgment stage.

It is so **ORDERED**.

Signed at Houston, Texas on August 16, 2013.

_____
Gray H. Miller
United States District Judge