**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| THOMAS L. TAYLOR, III, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3550 |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER**

Pending before the court is defendant United States Bank National Association's ("U.S. Bank") motion for summary judgment (Dkt. 39); plaintiff Thomas L. Taylor's (the "receiver") motion to defer consideration of summary judgment until relevant witnesses are deposed (Dkt. 42); defendant's motion to exclude or limit the testimony of the receiver (Dkt. 50); and plaintiff's motion to exclude the testimony of one of defendant's experts (Dkt. 52). After considering the motions, responses, replies, the record, and the applicable law, the motion for summary judgment is GRANTED IN PART and DENIED IN PART; the motion to defer consideration of summary judgment is DENIED; the motion to exclude the testimony of the defendant's expert is DENIED; and the motion to exclude or limit the testimony of the receiver is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

The background facts regarding the Evolution receivership have been recounted by this court several times.[1] Here, the court recounts the most relevant background facts to the pending motions.

_____

[1] *See* Dkt. 26 (order denying motion to dismiss); *Taylor v. Cmty. Bankers Secs. LLC*, No. 4:12-cv-2088, Dkt. 21 (S.D. Tex. June 20, 2013) (order denying motion to dismiss in related proceedings by receiver against a different defendant); *SEC v. Evolution Capital Advisors, LLC*, No. 4:11-cv-02945, Dkt. 42 (S.D. Tex, Dec. 22, 2011) (order granting motion to appoint receiver in proceedings by SEC against Evolution).

On August 10, 2011, the Securities and Exchange Commission (the "SEC") commenced an enforcement action styled *Securities & Exchange Commission v. Evolution Capital Advisors, LLC, et al.*, No. 4:11-cv-2945, in the United States District Court for the Southern District of Texas, Houston Division (hereinafter "EA"). Dkt. 1. The SEC alleged securities fraud with respect to two "Secured Note" offerings (the "Notes") by Evolution Capital Advisors, LLC ("ECA"), Evolution Investment Group I, LLC ("EIGI"), and Damian Omar Valdez made between February 2008 and August 2010. EA Dkt. 42 at 1. Valdez is the founder and manager of ECA and EIGI (collectively, "Evolution" or "Evolution entities"). EA Dkt. 1 at 5–6, 14–15.

The SEC claimed that Evolution made misleading and incomplete representations to potential investors in the Notes, thereby violating the Securities Act of 1933 and the Securities Exchange Act of 1934. EA Dkt. 42 at 1, 4. Through the sale of the Notes, Evolution received approximately $10.1 million in investments from 82 investors (the "Noteholders"). *Id.* at 5. The SEC also alleged that Evolution used $2.7 million from the proceeds of the second offering to make premium payments to the first offering's investors, in what the SEC characterized as "Ponzi" payments. *Id.* According to the SEC, the alleged misrepresentations in the Notes, along with Evolution's practice of taking "exorbitant" fees in the amount of $2.4 million, created a "dire" financial situation for Evolution and, in turn, its Noteholders. *Id.* As of December 31, 2010, Evolution's assets were at least $1.4 million less than the amount owed to the Noteholders. *Id.* at 5–6.

On December 22, 2011, the court granted the SEC's request for injunctive relief and the appointment of a receiver. EA Dkt. 42. The court held that Evolution perpetrated a fraudulent Ponzi scheme through the offer and sale of the Notes to the Noteholders. *Id.* at 28. On January 6, 2012, the court formally appointed the receiver, Thomas L. Taylor III to locate, take control of, and liquidate the Receivership assets. EA Dkt. 44 at 1–2. The court further authorized the receiver "to

institute . . . such actions or proceedings . . . as may in his discretion be advisable or proper for the protection of the Receivership Assets or proceeds therefrom, and . . . in his judgment be necessary or proper for the collection, preservation, and maintenance of the Receivership Assets." *Id.* at 5.

As part of the receiver's duties, he investigated potential claims arising from the Evolution Ponzi scheme, including a review of U.S. Bank's relationship with Evolution and the securities at issue. Dkt. 1 at 5–6. The receiver discovered that before the initial ECA offering, Valdez sought a corporate indenture trustee in late 2007 to administer the ECA Notes and represent the Noteholders' interests. *Id.* at 6. According to the receiver, the process undertaken by U.S. Bank's Trust Department for establishing the new client relationship with ECA lacked the hallmarks of due diligence and was "inadequate and perfunctory." *Id.* Ultimately, on January 15, 2008, ECA and U.S. Bank executed a Trust and Security Agreement (the "Trust Agreement"). *Id.* at 8 & Ex. G (Trust Agreement). The Trust Agreement specified that U.S. Bank "shall not be liable for any act, omission to act or sufferance to exist, *unless the same constitutes gross negligence or willful misconduct on its part*." *Id.* & Ex. G § 8.1(b) (emphasis added). The Trust Agreement also stated that U.S. Bank "shall not be liable for any error of judgment made in good faith by a Responsible Officer, *unless it shall be proved that [U.S. Bank] was grossly negligent in ascertaining the pertinent facts*." *Id.* & Ex. G § 8.1(c) (emphasis added).

In this ancillary proceeding, the receiver contends that U.S. Bank's actions and omissions as the Evolution indenture trustee "facilitated and implemented, both directly and indirectly, the Ponzi scheme held by this Court to have been perpetrated by Valdez through the Evolution entities. U.S. Bank personnel, acting with knowledge that the ECA and EIGI Offerings were separate and distinct offerings by different entities, disbursed Ponzi payments consisting of new investors' principal to pay earlier investors." Dkt. 18 at 2 (citing Dkt. 1 at 18).

3

Based on this alleged conduct, the receiver asserts six claims, sounding in the following five theories: (1) negligence; (2) breach of contract; (3) fraudulent transfer; (4) unjust enrichment; and (5) constructive trust. *See* Dkt. 1 at 22–28. U.S. Bank subsequently moved to dismiss the claims for failure to state a claim upon which relief can be granted, which this court denied on August 16, 2013. Dkt. 26. U.S. Bank then moved for summary judgment as to the receiver's claims, counts 1–3, on August 18, 2014. Dkt. 39. The receiver responded to the motion for summary judgment and also moved this court to defer consideration of the motion for summary judgment under Rule 56(d) until several fact and expert witnesses could be deposed. Dkt. 42. U.S. Bank replied to the motion for summary judgment (Dkt. 47), and responded to U.S. Bank's motion to defer consideration of the motion for summary judgment (Dkt. 46). The receiver replied to its motion to defer consideration of the motion for summary judgment. Dkt. 48. Then, the receiver filed a supplement to its original response to the motion for summary judgment to include evidence from witness depositions that had not been taken at the time the original response had to be filed. Dkt. 53. At the same time the receiver filed a suggestion of mootness related to its motion that the court defer consideration of the motion for summary judgment until more witnesses had been deposed, because discovery had been completed. Dkt. 55. Subsequently, defendant filed a reply to the receiver's supplemental response to the motion for summary judgment. Dkt. 61.

Additionally, the parties filed motions to exclude testimony. U.S. Bank filed a motion to exclude or limit the testimony of the receiver. Dkt. 50. The receiver filed a response (Dkt. 56) and U.S. Bank replied (Dkt. 57). The receiver filed a motion to exclude the testimony of an expert designated by U.S. Bank. Dkt. 52. U.S. Bank filed a response (Dkt. 54), and the receiver replied (Dkt. 59). All pending motions are ripe for decision.

## II. MOTION FOR SUMMARY JUDGMENT

At the outset, the court determines that the receiver's motion to defer consideration of the motion for summary judgment until fact and expert witness depositions are taken is moot because the discovery deadline has since passed. Dkt. 55 at 1. Therefore, the motion to defer consideration is DENIED.

U.S. Bank has moved for summary judgment on the first three of the receiver's claims: 1) negligence relating to breach of U.S. Bank's duties under the Trust Agreement (Dkt. 1 at 23); 2) breach of contract related to ECA (Dkt. 1 at 24); and 3) breach of contract related to EIGI (Dkt. 1 at 25). Defendant makes its motion on several grounds. As to the negligence claims, U.S. Bank asserts that 1) the statute of limitations bars all of the receiver's negligence claims; 2) there is no evidence that U.S. Bank owed Evolution entities an extra-contractual duty of care, 3) there is no evidence that U.S. Bank did not comply with the standard of care for providers of Corporate Trust Services; and 4) there is no evidence that alleged negligence caused the damage the receiver seeks to recover from U.S. Bank. As to the contractual claims, U.S. Bank asserts that it is entitled to summary judgment on all of the receiver's breach of contract claims because 1) the receiver cannot recover damages on behalf of Evolution caused by Evolution's own breaches of contract, and 2) there is no evidence that the alleged breaches of contract caused the damage the receiver seeks to recover from U.S. Bank.

### A. Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; "the requirement is that there be *no genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The

court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; it must disregard all evidence favorable to the moving party that the jury is not required to believe; and it must give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## B. Negligence Claims

### 1. Choice of Law

The parties dispute whether Texas or New York law applies to the receiver's negligence claims.  The receiver argues that New York law applies because the Trust Agreement contains a choice of law provision stating that New York law governs claims related to the Trust Agreement. Dkt. 42 at 24.  The receiver explains that "[t]he duty alleged by the [r]eceiver to have been breached by U.S. Bank is the common law duty, under New York law, than an indenture trustee perform non-discretionary tasks listed in the trust agreement." *Id.*  The receiver then asserts that because the duty arises under the Trust Agreement, which is governed by a choice of law provision, New York law applies. *Id.*  U.S. Bank argues that the choice of law provision in the Trust Agreement is narrow and only governs breach of contract claims, not tort claims.  Dkt. 47 at 2.  U.S. Bank claims that Texas

7

law governs the receiver's negligence claims under choice of law rules because Texas has the most significant relationship to the dispute.

"In diversity cases, [the court] appl[ies] the law of the forum state to determine which state's law applies." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). Determining which state's law governs is a question of law for the court to decide. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000). Texas courts look to "the law of the state with the most significant relationship to the particular substantive issue . . . to resolve that issue," except in "those contract cases in which the parties have agreed to a valid choice of law clause." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). Texas courts give effect to choice of law clauses "if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the state." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990).

Absent a valid choice of law clause, the burden is on the party asserting the application of foreign law to first show the existence of a true conflict of laws and then to demonstrate which law should apply based on state contacts to the asserted claims. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Of course, "[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary, and [the court] simply appl[ies] the law of the forum state." *Mumblow*, 401 F.3d 616 at 621 (internal citation omitted). If a conflict does exist, courts employ the "most significant relationship" test as outlined in the restatement. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). In addition to several broad policy-focused factors to consider in any choice of law analysis, the Restatement lists the following types of contacts the court should consider in evaluating which state's relationship to a tort claim is most significant: 1) the place where the injury occurred; 2) the place where the conduct causing the

8

injury occurred; 3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and 4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2) (1971).

The parties do not dispute the validity of the choice of law clause contained in the Trust Agreement.  Rather, they dispute whether it is broad enough to apply to the receiver's negligence claims.  Dkt. 42 at 29; Dkt. 47 at 2.  Therefore, the court first considers whether the choice of law provision applies to the receiver's negligence claims, because if it does, it will preclude a choice of law analysis.

The Fifth Circuit has considered similar cases to the one at hand.  In *Caton v. Leach Corp.*, the court looked at whether California or Texas law applied to the plaintiff's claims by first reviewing whether the choice of law provision in the parties' contract (a sales representative agreement) was written broadly enough to cover claims for the tort of good faith and fair dealing and a claim for restitution under quantum meruit.  896 F.2d 939, 943 (5th Cir. 1990).  The choice of law provision stated: "This Agreement shall be construed under the laws of the State of California."  *Id.* at 942.  The court found that in contrast to provisions that are written to cover all of the rights and duties of any claim arising out of or related in any way to a contract, the provision at issue was narrow and it did not address the entirety of the parties' relationship, such as the general rights and liability of the parties.  *Id.*  Because the plaintiff's claims involving tort and quantum meruit did not arise out of the contract, they were not covered by the choice of law provision.  *Id.*

In *Stier v. Reading & Bates Corp.*, the court considered whether an employment contract choice of law provision  applied to a plaintiff's personal injury tort claims.  992 S.W.2d 423, 433 (5th Cir. 1999).  The choice of law provision stated: "This agreement shall be interpreted and enforced in accordance with the laws of the State of Texas . . . ."  *Id.*  The court explained that by

9

the term's provisions, it "applies only to the interpretation and enforcement of the contractual agreement." *Id.* And because the plaintiff's claims did not "rise or fall on the 'interpretation and enforcement' of any contractual provision," the choice of law provision did not apply to the plaintiff's tort claims. *Id.* The court also considered the plaintiff's argument that the "duty to provide a safe place for him to work" was derived from his employment contract. *Id.* The court rejected this reasoning, explaining that the claim did not "concern the interpretation or enforcement of his contract," and that the duty to provide a safe workplace is generally derived from agency principles. *Id.*

> The choice of law provision related to the Trust Agreement in this case states:

> This Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York, without application of its conflict of laws rules.

Dkt. 1-8 at 34. Based on the plain language of the provision, it does not relate to all claims or disputes between the parties. Rather, the provision applies specifically to "this agreement," and states that the agreement will be governed, construed and enforced in accordance with New York law. This language is quite similar to the language considered in *Stier*, which also covered interpretation and construction of the agreement. There, the court found that the language did not cover a tort claim. Further, the receiver has made clear that his negligence claim arises under New York common law, not from the duties listed in the contract. Dkt. 42 at 29 ("The duty alleged to have been breached is a New York common law duty to perform non-discretionary tasks listed in the trust agreement, not a breach of the duties listed in the agreement."). *Id.* The court concludes that the choice of law provision does not encompass the receiver's negligence claim, and the court now considers whether a choice of law analysis is required.

10

As explained, the burden is on the party asserting the application of foreign law to not only show the existence of a true conflict of laws, but also to demonstrate which law should apply based on state contacts to the asserted claims. *Greenberg*, 161 S.W.3d at 70. Further, "the failure to provide adequate proof of choice of law . . . results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011) (internal quotation and citation omitted). Even if the court assumes that a conflict of Texas and New York laws has been shown, neither the response to the motion for summary judgment nor the supplement to the response contain evidence or argument as to why New York has the most substantial relationship to the claim. Dkt. 42 at 23–24.

The receiver also has not controverted U.S. Bank's arguments that 1) the receiver is based in Texas, 2) the Evolution Entities were based in Texas, 3) the U.S. Bank employee (Steven Finklea) who worked with Evolution resides in Texas, and 4) the injuries complained of occurred in Texas. These arguments have support in the record. While the choice of law is a question for the court, it is based upon evidence. Based on the uncontroverted evidence before the court as applied to the tort-focused Restatement factors, Texas has the most significant relationship to the negligence claim.

For the foregoing reasons, Texas law will apply to the receiver's negligence claim.

### 2. Statute of limitations

U.S. Bank argues that under Texas law, the appointment of a receiver does not affect the running of the statute of limitations, which is two years for negligence actions. Dkt. 39 at 15. U.S. Bank explains that the receiver filed his complaint on December 6, 2012, and each alleged act of negligence occurred more than two years prior to that date. *Id.* at 16. The receiver argues that the discovery rule applies and the earliest that the cause of action could have possibly accrued was when the receiver was appointed by this court on January 6, 2012. Dkt. 42 at 29. The receiver's position

is that because it brought claims against U.S. Bank less than a year after he was appointed, the two-year statute of limitations does not bar his claims.  Id.

Generally, the discovery rule applies to delay the accrual date in regard to the statute of limitations in "cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).  "The requirement of inherent undiscoverability recognizes that the discovery rule exception should be permitted only in circumstances where it is difficult for the injured party to learn of the negligent act or omission."  *Id* (internal citations omitted).  "[A] defendant moving for summary judgment on the affirmative defense of limitations must prove that defense conclusively." *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 193 (5th Cir. 2013).

The Fifth Circuit has recognized that claims brought by a receiver do not accrue at least until the point at which the receiver is appointed.  For example, in *Janvey*, the Fifth Circuit allowed a fraudulent transfer claim brought by a receiver to be considered, even when the limitations period—as it would have applied to the corporation itself—had technically passed. *Janvey*, 712 F.3d at 193.  The court reasoned that an individual Ponzi schemer who made fraudulent transfers of entities' assets would not prevent a receiver from suing on behalf of those entities, "once they have been freed from the [individual's] coercion, thus permitting the receiver to recover corporate assets that the [individual] fraudulently transferred to third parties." *Id.* at 192–3.  Therefore, to prevail on a statute of limitations defense when the discovery rule has been asserted in a receivership case, the defendant must present evidence to conclusively show that the receiver knew or could have reasonably known about the harm and for a time period longer than the statute of limitations before he filed suit. *Id.* at 193–94.

U.S. Bank provides no evidence to conclusively show that the receiver knew or should have known about the harms to Evolution more than two years before the receiver filed his claims. Further, it is undisputed that the receiver brought claims against U.S. Bank less than a year after he was appointed.  The statute of limitations does not bar the receiver's claim.

*3. No evidence as to an extra-contractual duty of care*

U.S. Bank's position is that there is no extra-contractual duty under Texas law upon which to hold U.S. Bank liable, and therefore the receiver's negligence claim is duplicative of its contract claims.  U.S. Bank argues that "the economic loss doctrine precludes recovery in tort where a plaintiff's only injury is an economic loss that is the subject of a contract." Dkt. 39 at 12.  U.S. Bank explains that because the receiver's claim of negligence depends on the pleading and proving of the contract in order to establish a duty, the action only sounds in contract.  *Id.* at 13.  The receiver responds that U.S. Bank breached the common law duty of indenture trustees to perform non-discretionary tasks with requisite care. Dkt. 42 at 24.  The receiver points to New York common law to support its claim.  *Id.*

In Texas, "[t]he threshold inquiry in a negligence claim is whether the defendant owes a legal duty to the receiver."  *Centeq Realty, Inc v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  The "existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question."  *Id.*

The receiver's complaint and response to the motion to dismiss are explicit that the receiver's negligence claim is based on the New York common law duty of indentured trustees to perform non-discretionary ministerial tasks listed in the trust agreement.  Dkt. 42 at 27.  This duty does exist under New York law.  *LNC Inv., Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1348 (S.D.N.Y. 1996) (though New York law generally limits an indenture trustee's obligations to those

13

defined in the indenture agreement, it does recognize two extra-contractual pre-default duties: to avoid conflicts of interest, and to perform basic non-discretionary ministerial tasks).  However, the court has determined that Texas law will apply to the receiver's negligence claim.  *See* Section II.B.1.  Based on the duty the receiver claims has been breached under New York law, the court finds no corresponding duty under Texas law that an indenture trustee must perform non-discretionary tasks with requisite care.  The receiver does not argue any other duty under Texas law upon which to base its negligence claim.

The receiver has not alleged a duty arising under Texas law upon which to find tort liability against U.S. Bank.  Because duty is an indispensable element of a negligence claim, the court need not consider U.S. Bank's arguments related to causation and damages.  U.S. Bank's motion for summary judgment as to the negligence claim is GRANTED.

### C. Breach of Contract

It is undisputed that New York law applies to the beach of contract claim, pursuant to the Trust Agreement's choice of law provision.  Dkt. 39 at 17; Dkt. 42 at 24.

### 1. Receiver's ability to recover damages caused by Evolution Entities' own breaches

U.S. Bank argues that the receiver cannot recover on behalf of the Evolution entities for breach of contract against U.S. Bank because the law does not allow a plaintiff to recover damages caused by its own breach of contract.  Dkt. 39 at 17.  U.S. Bank contends that it only acted at the direction of the Evolution Entities, and it cannot be held liable for complying with client requests, even if those requests were in violation of the agreement.  *Id.* at 18.  The receiver argues that U.S. Bank is asserting a defense of *in pari delicto*, and the wrongful acts of the fraudfeasor that used an entity to carry out his fraud do not bind the receiver appointed over such entity.  Dkt. 42 at 30.

U.S. Bank does appear to be raising an *in pari delicto* defense.  *In pari delicto* is an equitable doctrine that precludes the plaintiff from recovering when both parties are equally at fault.  *Cobalt Multifamily Investors I, LLC v. Arden*, 857 F. Supp. 2d 349, 363 (S.D.N.Y. 2011).  The United States Supreme Court "has established a two-prong test for application of an *in pari delicto* defense in cases dealing with securities laws, allowing the defense 'where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violation he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.'"  *Id.* (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–311, 105 S. Ct. 2622 (1985)).  "New York courts have historically held that a receiver may sue to set aside fraudulent transfers, even though the corporation, if it were suing in its own right (as opposed to having the receiver sue on the corporation's behalf), would be prevented from doing the same."  *Cobalt Multifamily Investors I, LLC v. Arden*, —F. Supp. 3d —, No. 06–CV–6172, 2014 WL 4548552, at *5 (S.D.N.Y. 2 Sept. 11, 2014) (hereinafter "Cobalt II").  While this rule focuses on fraudulent transfer, New York courts recognize that a receiver should not be barred by defenses applicable to the corporation over which he was appointed.  For example, "[t]he receiver represents both the corporation and creditors and stockholders, and in his character as trustee for the latter he may disaffirm and maintain an action as receiver to set aside illegal or fraudulent transfers of the property of the corporation made by its officers or agents, or to recover its funds or securities invested or misapplied."  *Attorney Gen. v. Guardian Mut. Life Ins. Co.*, 77 N.Y. 272, 273 (1879).  Additionally, while bankruptcy trustees are regularly precluded by bankruptcy

laws from bringing any suit that the corporation could not have brought pre-petition, a receiver appointed by the court outside of a bankruptcy setting is treated differently.[2]

The United States Supreme Court has been clear that the public interest should be considered where a private suit serves important public purposes. *Bateman*, 472 U.S. at 307. This is because, for example, "denying the *in pari delicto* defense in [some securities-related cases] will best promote the primary objective of the federal securities laws—protection of the investing public and the national economy through the promotion of a high standard of business ethics in every facet of the securities industry." *Id.* at 315 (internal citation omitted)). To this point, Evolution entered into the Trust Agreement with U.S. Bank to provide security to the Noteholders. Dkt. 1-8 at 2. And this court appointed a receiver to preserve the Evolution assets for investors. If this court denies the receiver's claims on the equitable basis of *in pari delicto*, U.S. Bank will not be held accountable for its alleged breaches of the Trust Agreement. This result does not promote the high standard of business ethics in the securities industry.

For the foregoing reasons, the court concludes that it would be inequitable to bar the receiver's claims on the basis of *in pari delicto.*

U.S. Bank also argues that the language of the Trust Agreement requires it to comply with, and shields it from liability related to, all written requests from Evolution. Dkt. 39 at 19. In support, U.S. Bank points to section 8.2(c) of the Trust Agreement:

---

[2] *See, e.g.*, Cobalt II, – F. Supp. 3d at *4; *Williamson v. Stallone*, 908 N.Y.S.2d 740, 751–52 (N.Y. Sup. Ct. 2010) (slip opinion) ("Unlike a bankruptcy trustee, who is precluded by Section 541 of the Bankruptcy Code from bringing any suit that the corporation could not have brought pre-petition, the Trustee here is an impartial individual appointed by the court who derives his powers from the partnership agreement and state law."); *Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs., LLC*, No., 993 N.Y.S.2d 647, at *10 (N.Y. Sup. Ct. 2013) (slip opinion) ("Unlike receivers, bankruptcy trustees are subject to Bankruptcy Code section 541, which prevents such trustees from bringing any suit that the corporation could not have brought pre-petition. The Courts have therefore repeatedly applied the *in pari delicto* doctrine to bankruptcy trustees where the corporation itself would have been barred from suing based on the doctrine.").

(c)      the Trustee may conclusively rely and shall by fully protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document *believed by it to be genuine and to have been signed or presented by the proper party or parties.*

Dkt. 1-8 at 19, § 8.2(c) (emphasis added).  However section 8.2(b) provides some context as to the breadth of section 8.2(c):

(b)      the Trustee will not be liable for any action taken, suffered or omitted by the Trustee *in good faith* and *believed by the Trustee to be authorized or within the discretion or rights or powers conferred by this Agreement.*

Dkt. 1-8 at 19, § 8.2(b) (emphasis added).

When considered together, section 8.2(b) states that the trustee will not be liable for its actions if it acted 1) in good faith *and* 2) believed the action was authorized by the Trust Agreement. In asserting the shield of liability, the trustee must satisfy both requirements.  Section 8.2(c) protects the trustee as to the genuineness of the directions upon which it relies.  It does not say that U.S. Bank is exempt from section 8.2(b) or that it is protected when acting contrary to the terms of the Trust Agreement.  U.S. Bank's position that it is fully protected for any alleged breaches under section 8.2(c) is not persuasive.  U.S. Bank's defense in this regard is unavailing.

*2. Is there sufficient evidence of causation and damages?*

U.S. Bank argues that there is no evidence that the alleged breaches of contract caused the damages the receiver seeks to recover.  Dkt. 39 at 19.  Specifically, U.S. Bank argues that the receiver can only recover damage sustained by Evolution, which is not the full amount of claims by third parties currently pending against the receivership, as the receiver claims.  *Id.* at 20.  Further, U.S. Bank argues, there is no evidence that U.S. Bank's conduct caused Evolution to suffer any amount of damages.  *Id.*  The receiver responds that it has provided evidence of causation based on the admitted actions of U.S. Bank, and other evidence of U.S. Bank's actions that were not permitted

by the Trust Agreements and that it had no discretion to take.  Dkt. 42 at 34.  Further, the receiver asserts that U.S. Bank's arguments about the amount of damages is a factual, not a legal, determination, and resolution of factual issues is inappropriate at the summary judgment stage.

Under New York law, to succeed in a breach of contract case, the plaintiff must provide evidence as to proximate cause and damages.  *Cangro v. Noah Builders, Inc.*, 52 A.D. 758, 759 (N.Y. App. Div. 2008).  "[A] finding of proximate causation must be based on logical inferences from the record . . . ."  *Id.*

The receiver has met its burden to produce evidence on causation and damages that presents a triable issue of fact.  The receiver has provided evidence of several transfers by U.S. Bank that were allegedly contrary to the terms of the Trust Agreement.  There is specific evidence of these transfers, and in many cases the reasons for the transfers, in the record.  *See* Dkts. 43-4 at 25–32; 43-6 at 3–4; 43-4 at 13; 43-6 at 9.  Evidence also shows that at times U.S. Bank recognized and adhered to the bounds of the Trust Agreement by refusing to transfer funds to Evolution based on the parameters of the Trust Agreement, and at other times it made transfers regardless of the fact that they were outside the parameters of the Trust Agreement.  *E.g., compare* Dkt. 53-1 at 25–26 (U.S. Bank representatives turning down a request from Evolution for a transfer of funds in July 2008 to pay its legal fees because 1) the request was not one of the three cases in which U.S. Bank could disburse funds, and 2) U.S. Bank could not pay Evolution even residual amounts until Evolution made an initial payment to investors), *with* Dkt. 43-4 (evidence of commissions payments by U.S. Bank between April and August 2008 to a broker dealer for reasons outside the parameters of the Trust Agreement).  Further, it is undisputed that Evolution does not have sufficient assets to cover its obligations by more than a million dollars.  There is thus a question of fact as to whether U.S.

Bank made improper transfers that reduced the amount of money in the Evolution accounts, accounts that now have insufficient funds to pay investors.  Dkt. 53-1 at 25.

For the foregoing reasons, U.S. Bank's motion for summary judgment as to the receiver's breach of contract claims is DENIED.

### III. MOTION TO EXCLUDE TESTIMONY

#### A. Legal Standard

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597–98, 113 S. Ct. 2786 (1993).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under *Daubert*, a trial court acts as "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir.2002).  *Daubert* and its principles apply to both scientific and non-scientific expert testimony.  *Kumho Tire*, 526 U.S. at 147.  Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility.  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert.  *Gen. Elec. Co. v.*

*Joinder*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of her opinion reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for her testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *See* Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276. However, the proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

Federal Rule of Evidence 701 outlines the parameters of a lay-witness opinion: "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

### B. Plaintiff's Motion to Exclude Defendant's Expert

Defendant has put forth Mr. Landau as an expert in the corporate trust industry. Defendant explains that he has worked in various parts of the business for 50 years, including serving as a trustee, authoring a textbook on corporate trusts, serving as a chairman of several industry group committees related to corporate trusts, and training and advising participants in the corporate trust and securities industries. Dkt. 54 at 4–5. The receiver does not challenge the qualifications of Mr. Landau, nor the relevance of his testimony, but only the reliability of his testimony. The receiver

claims that Mr. Landau's testimony is not based upon sufficient facts and that he fails to reliably apply principles and methods to the facts of the case. Dkt. 52. U.S. Bank responds that Mr. Landau reviewed several documents available at that point in the case before he provided an opinion, and the fact that the receiver disagrees with Mr. Landau's opinions does not render the testimony inadmissible. Dkt. 54 at 2. The court will consider the receiver's objections in turn.

The receiver's first argument is that Mr. Landau's testimony is not reliable because he did not have sufficient facts upon which to render an opinion, such as interviewing a specific U.S. Bank representative, or reviewing documentation about an Evolution affiliate called CashReady, LLC. Dkt. 52 at 5–6. Concerns about the factual basis of Mr. Landau's opinion go to the weight of the opinion, not its admissibility. Cross examination can address the receiver's concerns. *Daubert*, 509 U.S. 579 at 596.

The receiver's second argument is that Mr. Landau fails to apply principles and methods reliably to the facts because Mr. Landau's report found that U.S. Bank's conduct met industry standards. Further, the receiver did not agree with Mr. Landau's answers to questions relating to the amendment of the ECA agreement. Dkt. 52 at 7. Again, disagreeing with an opinion, alone, is not grounds to render an opinion inadmissible. Further, cross examination can address the receiver's concerns. As an illustration, the receiver's own briefing shows that when the receiver's counsel deposed Mr. Landau and explained the alleged conduct that occurred in the case, Mr. Landau at least twice admitted that the conduct described to him did not meet the appropriate standard of care required of trustees. Dkt. 52 at 9–10.

The receiver has not established a basis upon which to render Mr. Landau's testimony unreliable. U.S. Bank has demonstrated by a preponderance of the evidence that Mr. Landau meets

the threshold requirements to provide an expert opinion, and his opinion will not be excluded.  The receiver's motion is DENIED.

### C. Defendant's Motion to Exclude or Limit the Receiver's Testimony

U.S. Bank argues that the receiver's testimony should be excluded because his damages methodology and testimony have no relevance or causal connection to the harm allegedly suffered by Evolution Entities; he cannot testify as to the standard of care owed by a corporate trustee; and separately, he should be precluded from testifying under the advocate-witness rule.  Dkt. 51.  The receiver's position is that the receiver's testimony is not expert testimony, it is lay-witness opinion testimony; the receiver's breach of contract damages calculation methodology is sound; and Texas law does not require expert testimony to establish the standard of care in situations where general experience and common sense enable a layman to determine the causal relationship between the event and the condition.  Dkt. 56.

The advocate-witness rule disallows advocates from testifying on their client's behalf for various reasons, including: "(1) the lawyer may be a less effective witness because he is more easily impeachable for interest; (2) opposing counsel may be inhibited in challenging the credibility of a lawyer who also appears as an advocate; (3) a lawyer-witness must argue his own credibility; and (4) while the role of a witness is to objectively relate facts, the role of an advocate is to advance his client's cause."  *F.D.I.C. v. U.S. Fire Ins. Co*., 50 F.3d 1304, 1331 (5th Cir. 1995).

U.S. Bank asserts that the receiver is testifying as an advocate-witness.  Regardless of whether the receiver is a lawyer by trade, he seeks to testify as the receiver in this case, not an advocate representing the receivership in litigation.  Further, defendant makes no argument, nor presents any evidence, that any of the reasons listed by the Fifth Circuit to justify application of the advocate-witness rule are present in this case.  The court finds that the advocate-witness rule is not

applicable because the receiver is not serving as the attorney for the receivership.  Therefore, the court DENIES defendant's motion to exclude the receiver's testimony on this basis.

The parties appear to agree that the receiver cannot provide expert testimony.  Dkts. 51 at 8; 56 at 3, 9.  However, the receiver does intend to offer opinions in the form of lay-witness opinions.  Dkt. 56 at 3–4.  The receiver conducted an investigation in this case pursuant the court's order.  The court will allow the receiver to testify about his relevant lay-witness opinions that are based on his rational perceptions from the investigation, as long as those opinions do not involve the specialized knowledge of an expert.  Essentially, the receiver's testimony is limited to the confines of Federal Rule of Evidence 701.  Therefore, defendant's motion to exclude the receiver's testimony is DENIED and defendant's motion to limit the receiver's testimony is GRANTED, such that the receiver's testimony must adhere to Federal Rule of Evidence 701.

Additionally, both parties argue about whether expert testimony is required to prove the elements in this case.  The court recognizes that in order to prove that the contract has been breached, the receiver must provide sufficient evidence such that a reasonable juror could find that U.S. Bank was "grossly negligent" or "willful" in its conduct.  Dkt. 1-8 at 18.  However, whether to offer expert opinions in this case is a strategy call left to the discretion of the parties.[3]

---

[3] Expert opinions are not required in cases where establishing the elements of the claim for a jury could be considered obvious or common sensical.  *Salem v. U.S. Lines* Co., 370 U.S. 31, 35, 82 S. Ct. 1119 (1962) ("[E]xpert testimony not only is unnecessary but indeed may be properly excluded in the discretion of the trial judge if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training experience, or observation in respect of the subject under investigation." (internal citation omitted)); *Pearce v. Feinstein*, 754 S. Supp. 308, 389–90 (W.D.N.Y. 1990) ("Even in cases involving specialized trades, expert testimony on the standard of care is not invariably required. . . . No expert is needed to educate jurors on a matter so firmly within their own life experiences. . . .); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) ("Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable   probability, the causal relationship between the event and the condition. Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation.").

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on the basis of negligence is **GRANTED**, and on the basis of breach of contract is **DENIED**.  Plaintiff's motion to defer consideration of summary judgment is **DENIED**.  Plaintiff's motion to exclude the testimony of defendant's expert Mr. Landau is **DENIED**.  Defendant's motion to exclude or limit the testimony of the receiver is **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

Signed at Houston, Texas on February 6, 2015.

_____
Gray H. Miller
United States District Judge